**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NANCY ASARO, and**<br>**LORI DRING,**<br><br>**Plaintiffs**<br>**v.**<br><br>**PAOLO LUCINO LEPRI,**<br>**MOLLY A FRANCESCO LEPRI,**<br><br>**JEAN ANN GILROY,**<br>**ROBERT GILROY,**<br><br>**JOHN ELTRINGHAM,**<br>**SANDRA L ELTRINGHAM,**<br><br>**STEVEN GARDNER,**<br>**CAROL GARDNER,**<br><br>**HENRY R LEMPICKY,**<br>**CYNTHIA LEMPICKY,**<br><br>**FRANK J BRIER,**<br>**MARY CLAIRE BRIER,**<br><br>**BRENDA PENALUNA,**<br><br>**GCR LAKE ARIEL LLC,**<br><br>**ALLAN D. BIRNEY,**<br>**LYNN W. BIRNEY,**<br><br>**SMITH FAMILY IRREVOCABLE TRUST,**<br><br>**STEPHEN CRESSWELL MCILNAY,** | CIVIL ACTION<br>NO.: |

| | |
|---|---|
| **DAVID NATHAN MCILNAY,**<br><br>**HELEN B. SCOTT,**<br><br>**LOUIS JAMES CROCE,**<br><br>**LEE CONABOY DI CENSO,**<br>**PETER A. DI CENSO,**<br><br>**COURTNEY HOMICK AND ALLYSON POTOCHNICK,**<br><br>**FREDERICK P MITCHELL,**<br>**CATHERINE MITCHELL,**<br><br>**FRANK R PENATER,**<br>**SHARON P PENATER,**<br><br>**JOHN B. DEMPSEY,**<br>**NANCY DEMPSEY,**<br><br>**KIRK STEPHENS HINKLEY IV AND DANELLE MARIE HINKLEY,**<br><br>**DANIEL P O'BRIEN GRANTOR TRUST,**<br><br>**WILLIAM J. HINZ REVOCABLE TRUST,**<br><br>**ANTHONY LABORANTI JR AND CAROL A LABORANTI,**<br><br>**ROBERT KEEGAN,**<br><br>**JOHN T NALEVANKO,**<br>**KATHRYN D NALEVANKO,**<br><br>**JOHN C WINN,** | |

**MARNEL M WINN,**

**PETER LOMBARDI,**

**ERIK GUTT,**
**BARBARA GUTT,**

**STEVEN KOWALCZYK,**
**KAREN BARILLO,**

**REGINA CLAUSS,**

**HAI Y WANG,**
**CHAUN ZHANG,**

**MICHAEL KRAWCZYK,**
**DEBORAH C KRAWCZYK,**

**TIMOTHY CLAUSS,**
**ROSANNE CLAUSS,**

**STOODLEY-MERRITT FAMILY REVOCABLE TRUST,**

**LAKE ARIEL FAMILY PARTNERSHIP, LP,**

**ELIZABETH KELLY,**

**ISAACS FAMILY REVOCABLE TRUST,**

**CHARLES ISAACS AND PAULA ISAACS**

**Defendants.**

# PLAINTIFFS' COMPLAINT

NOW COME Plaintiffs, LORI DRING and NANCY ASARO, by and through their counsel, Philip A. Davolos, III, Esquire, of Davolos Law Group, and Howard A. Rothenberg, Esquire, and Ryan P. Campbell, Esquire, of Rothenberg & Campbell, and hereby state the following:

## PRELIMINARY STATEMENT

1. Through the within action, Plaintiffs, Nancy Asaro and Lori Dring (collectively "Plaintiffs" or "Asaro/Dring"), seek not only compensation, and the protection and acknowledgement of property rights, but also finality.

2. Reluctant though they may be to engage in further litigation, Plaintiffs are left with no choice but to seek finality through this Honorable Court.

3. Plaintiffs are left with no choice but to bring this action because of Defendants' conduct, and to a large extent the conduct of non-party Ariel Land Owners, Inc. ("ALO").

4. Plaintiffs in this action are two sisters, Nancy Asaro and Lori Dring, who jointly own land that shares a common property boundary with the lake known as Lake Ariel situated in Lake Township, Pennsylvania.[1]

[1] "Lake Ariel" is comprised of two bodies of water connected by a channel. The larger body of water is called Lake Ariel, formerly called Jones Pond, and the smaller body of water is known as Mud Pond. Collectively, these two connected bodies of water make up what is technically considered to be "Lake Ariel." Plaintiffs own land with a common property boundary along parts of both Mud Pond and Lake Ariel.

5. Plaintiffs are the owners in fee of in excess of eighty-nine (89) acres of land, in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania. The majority of Plaintiffs' land is situated near the southwest boundary of Lake Ariel.

6. In addition, Plaintiffs own a contiguous parcel of land that is referred to in this Complaint as the "West Shore Parcel." The West Shore Parcel is a 1.92 acre parcel that is over a mile (5,800 ft) in length, and averages between fourteen (14) and fifteen (15) feet in width, but at its widest is approximately twenty-eight (28) feet wide and at its most narrow location is about five (5) feet wide.

7. The West Shore Parcel shares a common property boundary with Lake Ariel. In fact, the boundaries of the West Shore Parcel were set by the elevation of the water level of Lake Ariel. Specifically, one boundary of the West Shore Parcel is the natural elevation of the water at lake Ariel, which is approximately 1,423.5 feet above sea level. This is the margin of the natural water line at Lake Ariel. Exhibit "A" and Exhibit "B" show the approximate location of the West Shore Parcel.

---

Attached hereto as Exhibit "A" is a high-altitude photograph taken of Lake Ariel and the surrounding area. Though not to scale, the blue line in this photograph shows the approximate location of the West Shore Parcel, defined below, over which the Defendants must cross to traverse directly from their respective lots to reach Lake Ariel. The area outlined in pink shows the eighty-six (86) acres owned by Plaintiffs along with lake frontage. The yellow outlined area shows the general area where the lake house purchased in 1985 by Plaintiffs' parents, Joseph Asaro and Elaine Asaro, is situated. (The yellow line is not intended to reflect any approximate property lines only to reflect the location of the lake house.)

8. Thus, Plaintiffs own land that is "lakefront" in that it shares a common property boundary with Lake Ariel.

9. Defendants in this action are persons who claim possessory property rights in various dwellings and lots near Lake Ariel in Lake Township, Pennsylvania. Defendants are "leaseholders" who lease lots near the western shore of Lake Ariel. Defendants are part of a group of similarly situated leaseholders with leases for lots along western edge of West Shore Drive in Lake Township, Pennsylvania.

10. Defendants hold leases for lots that are separated from Lake Ariel, first by land owned by ALO, including a private road referred to as West Shore Drive, then by land owned by ALO to the east of West Shore Drive (i.e., the berm of West Shore Drive), and then by the West Shore Parcel, which is owned in fee by Plaintiffs.

11. The West Shore Parcel is situated such that Defendants cannot walk directly from the margins of their respective leased lots to Lake Ariel without physically crossing over the West Shore Parcel.

12. Thus, Defendants' respective leased lots are not "lakefront" in that Defendants' respective leased lots do not share a common property boundary with Lake Ariel, and more importantly, Defendants cannot access Lake Ariel via the most direct course from the margin of their respective leased lots without first crossing over property owned in fee by Plaintiffs.

13. Defendants' respective leased lots do not border, touch or share a common property boundary with Plaintiffs' lakefront property, i.e., the West Shore Parcel.

14. For Defendants to traverse directly and unimpeded from the margins of their respective leased lots to the waters of Lake Ariel, Defendants must first cross land owned by ALO, including West Shore Drive, and then continue across land owned by Plaintiffs, and then continue again on to land owned by ALO and/or the waters of Lake Ariel.

15. Defendants and/or those associated with Defendants trespass on Plaintiffs' property by crossing over it in order to take the most direct path of travel from Defendants' respective leased lots to Lake Ariel. To be completely clear, there are other means of access for the Defendants to reach the waters of Lake Ariel without traversing over and trespassing on the land owned in fee by Plaintiffs. Defendants could access Lake Ariel without ever touching Plaintiffs' property if they simply walked a little further. Every Defendant could access Lake Ariel by staying on ALO's property and going around Plaintiffs' property to reach the lake.

16. Moreover, certain Defendants have constructed structures and/or docks on, in and about Plaintiffs' lakefront property – without the consent or permission of Plaintiffs and in violation of Plaintiffs' property rights. There are other locations

on the shores of Lake Ariel where Defendants could locate docks and/or boathouses without constructing or maintaining same on Plaintiffs' property.

17. As set forth in greater detail below, Plaintiffs are at risk and their rights are being violated by the conduct of Defendants.

18. Plaintiffs pay taxes on their lakefront real property, and Plaintiffs carry liability insurance to insure against injuries that may occur on their lakefront property. Yet, Defendants continue to use and occupy that lakefront property, without permission, and without any legally cognizable right to do so.

19. Worse yet, Defendants' conduct makes clear that they do not own, and they do not claim to own, the land that they use/traverse to take the most direct path from their respective leased lots to Lake Ariel. Defendants' conduct makes clear that they do not own, and they do not claim to own, the land on which they have constructed docks/boathouses. This is evident because, *inter alia*, upon information and belief Defendants make payments to ALO for ingress, egress, and access to Lake Ariel and for ALO's "permission" to maintain docks/boathouses on the margin of Lake Ariel, i.e., on the West Shore Parcel. Obviously, Defendants cannot claim to own, nor can they adversely possess, nor can they claim prescriptive rights against, land that they pay a third-party to use. The problem is that Defendants are paying ALO to use property that belongs to Plaintiffs. Moreover, by agreement in April 2019, the Defendants and/or their predecessors in interest and/or "title" expressly

stated, agreed, and acknowledged that Plaintiffs own the West Shore Parcel. Finally, set forth in greater detail below, this Honorable Court has repeatedly held that Plaintiffs own the West Shore Parcel.

20. Plaintiffs bring three counts: (1) Trespass; (2) Ejectment; and (3) Declaratory Judgment and Injunctive Relief. Plaintiffs bring claims for trespasses over the West Shore Parcel that occurred on or after April 1, 2019, and Plaintiffs bring claims for continuing trespass commenced before or after April 1, 2019. [2]

## PARTIES

### *Plaintiffs*[3]

21. The Plaintiff, Nancy Asaro, is an individual residing at 28 Trenton Terrace, Wayne, New Jersey, and is a resident and citizen of the State of New Jersey.

22. The Plaintiff, Lori Dring, is an adult individual residing at 29 Sleepy Hollow Drive, Oak Ridge, New Jersey 07438, and is a resident and citizen of the State of New Jersey.

---

**[2] Plaintiffs intentionally omitted Exhibits "D" to "J" so that the remaining Exhibits match to the extent possible the Exhibits from the Complaint filed in related action Asaro v. Clauss. 3:25-CV-0197. Thus, the Exhibits in this Complaint are "A" to "B", "C-1" to "C-41", and "K" to "Z".**

[3] Attached hereto as Exhibit "A" is a high-altitude photograph taken of Lake Ariel and the surrounding area. The explanation for the colored highlighting in Exhibit "A" is provided in the preceding footnote. Attached hereto as Exhibit "B" is a reproduction of a "Location Plan" provided for illustrative purposes only that also shows the location of the West Shore Parcel, described in greater detail below, owned in fee by Plaintiffs.

*Defendants*

23. The Defendants, Paolo Lucino Lepri and Molly A Francesco Lepri, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 3 Oak Lane, Scranton, PA 18505; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB 5581, PG 0253, and Tax Parcel # 12-0-0003-0004 and Control # 041114, with street address of 194 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit “C-1” is a satellite image depicting the location of and area surrounding 194 West Shore Drive. Exhibit “C-1” is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

24. The Defendants, Jean Ann Gilroy and Robert Gilroy, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 5154 Jadwin St, Scranton, PA 18509; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB 1697, PG 0181, and Tax Parcel # 12-0-0003-0005 and Control # 041115, with street address of 196 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit “C-2”

is a satellite image depicting the location of and area surrounding 196 West Shore Drive. Exhibit "C-2" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

25. The Defendants, John Eltringham and Sandra L Eltringham , who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 1724 Liberty CV, Mechanicsburg, PA 17055-6791; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 1702/0126, and Tax Parcel # 12-0-0003-0006 and Control # 041116, with street address of 206 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-3" is a satellite image depicting the location of and area surrounding 206 West Shore Drive. Exhibit "C-3" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

26. The Defendants, Steven Gardner and Carol Gardner, who are upon information and belief adult individuals, and residents and citizens of the State of Colorado, with an address located at 10651 Leonardo PL Littleton, CO 80125; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5228/0271, and Tax Parcel #

12-0-0003-0006.00002 and Control # 053905, with street address of 200 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-4" is a satellite image depicting the location of and area surrounding 200 West Shore Drive. Exhibit "C-4" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

27. The Defendants, Henry R Lempicky and Cynthia Lempicky, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at RR 1 Box 125, Dalton, PA 18414-9766; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 0414/450, and Tax Parcel # 12-0-0003-0008 and Control # 041118, with street address of 210 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-5" is a satellite image depicting the location of and area surrounding 210 West Shore Drive. Exhibit "C-5" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

28. The Defendants, Frank J Brier and Mary Claire Brier, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 1005 Sunset St, Scranton, PA 18509; and claim an interest in certain real property near the western

shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5686/0084, and Tax Parcel # 12-0-0003-0009 and Control # 041119, with street address of 218 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit “C-6” is a satellite image depicting the location of and area surrounding 218 West Shore Drive. Exhibit “C-6” is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

29. The Defendant, Brenda Penaluna, who is upon information and belief an adult individual, and resident and citizen of the State of New York, with an address located at 433 Ridgebury Rd, Slate Hill NY 10973; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5874/0038, and Tax Parcel # 12-0-0003-0011 and Control # 041121, with street address of 220 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit “C-7” is a satellite image depicting the location of and area surrounding 220 West Shore Drive. Exhibit “C-7” is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

30. The Defendant, GCR LLC is an entity , who are, that is upon information and belief comprised of adult individual members, and has a registered address located in the Commonwealth of Pennsylvania at 113 Leslie Drive,

Scranton, PA 18505-2215; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4507/0102, and Tax Parcel # 12-0-0003-0015 and Control # 041126, with street address of 228 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-8" is a satellite image depicting the location of and area surrounding 228 West Shore Drive. Exhibit "C-8" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

31. The Defendants, Allan D. Birney and Lynn W. Birney, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 4625 Mill Rd , Coopersburg, PA 18036; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 6471/0225, and Tax Parcel # 12-0-0003-0017 and Control # 041128, with street address of 234 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-9" is a satellite image depicting the location of and area surrounding 234 West Shore Drive. Exhibit "C-9" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

32. The Defendant, Smith Family Irrevocable Trust is an entity, that is upon information and belief comprised of adult individual members, and has a registered address located in the Commonwealth of Pennsylvania at 4 Tunnekl Hill Rd, Factoryville, PA 18419; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5072/0074, and Tax Parcel # 12-0-0003-0019 and Control # 041130, with street address of 238 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-10" is a satellite image depicting the location of and area surrounding 238 West Shore Drive. Exhibit "C-10" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

33. The Defendants, Stephen Cresswell McIlnay and David Nathan McIlnay, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 63 Dolomite DR, York, PA 17408-6357 and 49 Willow Creek Road, Wrightsville, Pennsylvania; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 1418/0282, and Tax Parcel # 12-0-0003-0021, 12-0-0003-0021.0001- and Control # 041132, and #110158 with street address of 246 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibits "C-11" and "C-12" are satellite images depicting the

location of and area surrounding 246 West Shore Drive. Exhibits "C-11" and "C-12" are for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

34. The Defendant, Helen B. Scott, who is upon information and belief an adult individual, and resident and citizen of the Commonwealth of Pennsylvania, with an address located at 458 QUINTON RD, Scott Township, PA 18447; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 0186/0312, and Tax Parcel # 12-0-0003-0026.0001 and Control # 041138, with street address of West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-13" is a satellite image depicting the location of and area surrounding West Shore Drive. Exhibit "C-13" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

35. The Defendant, Louis James Croce, who is upon information and belief an adult individual, and resident and citizen of the State of New York, with an address located at 4137 Stratford Ave Garden City, NY 11530; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4817/0327, and Tax Parcel # 12-0-0003-0028 and Control # 041140, with street address of 264 West Shore Drive,

Lake Ariel, PA 18436. Attached hereto as Exhibit "C-14" is a satellite image depicting the location of and area surrounding 264 West Shore Drive. Exhibit "C-14" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

36. The Defendants, Lee Conaboy and A. Peter DiCenso, who are upon information and belief adult individuals, and residents and citizens of Georgia, with an address located at 1445 Collier Dr SE Smyrna, GA 30080-4474; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 1185/164, and 1291/0225 and Tax Parcel # 12-0-0003-0029, 12-0-0003-0029.0001- and Control # 041141, and #110142 with street address of 266 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibits "C-15" and "C-16" are satellite images depicting the location of and area surrounding 266 West Shore Drive. Exhibits "C-15" and "C-16" are for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

37. The Defendants, Courtney Homick and Allyson Potochnick, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 131 MCESTER DR, Gouldsboro, PA

18424; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 6317/0153 and Tax Parcel # 12-0-0003-0033 and Control # 041146, with street address of 272 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-17" is a satellite image depicting the location of and area surrounding 272 West Shore Drive. Exhibits "C-17" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

38. The Defendants, Frederick P Mitchell and Catherine Mitchell , who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 406 Luzerne Street, Scranton, PA 18505; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5636/0146 and Tax Parcel # 12-0-0003-0034 and Control # 041147, with street address of 276 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-18" is a satellite image depicting the location of and area surrounding 276 West Shore Drive. Exhibits "C-18" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

39. The Defendants, Frank R Penater and Sharon P Penater, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 2507 W Elm Street, Allentown, PA 18104-6523; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 1497/0293 and Tax Parcel # 12-0-0003-0035 and Control # 041148, with street address of 278 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-19" is a satellite image depicting the location of and area surrounding 278 West Shore Drive. Exhibits "C-19" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

40. The Defendants, John B. Dempsey and Nancy Dempsey, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 1610 Clay Ave., Dunmore, PA 18509; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4199/0096 and Tax Parcel # 12-0-0003-0037 and Control # 041150, with street address of 282 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-20" is a satellite image depicting the location of and area surrounding 282 West Shore Drive. Exhibits "C-20" is for

illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

41. The Defendants, Kirk Stephens Hinkley IV and Danelle Marie Hinkley, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 880 Colwell Hill Rd, Seuquehanna, PA 18847; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5241/0103 and Tax Parcel # 12-0-0003-0039 and Control # 041152, with street address of 286 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit “C-21” is a satellite image depicting the location of and area surrounding 286 West Shore Drive. Exhibits “C-21” is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

42. The Defendant, Daniel P O’Brien Grantor Trust is an entity, that is upon information and belief comprised of adult individual members, and has a registered address located in the Commonwealth of Pennsylvania at 202 Debbie Dr Rear, Scranton, PA 18505; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5948/0153, and Tax Parcel # 12-0-0003-0041 and Control # 041154, with street address of 290 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit

"C-22" is a satellite image depicting the location of and area surrounding 290 West Shore Drive. Exhibit "C-22" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

43. The Defendant, William J. Hinz Revocable Trust is an entity, that is upon information and belief comprised of adult individual members, and has a registered address located in Delaware at 122 Pondview Lane, Seaford, DE 19973; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4242/0313, and Tax Parcel # 12-0-0003-0042 and Control # 041155, with street address of 291 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-23" is a satellite image depicting the location of and area surrounding 291 West Shore Drive. Exhibit "C-23" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

44. The Defendants, Anthony Laboranti Jr and Carol A Laboranti, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 257 State Rt 590, Elmhurst TWP, PA 18444; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 0244/1141 and Tax

Parcel # 12-0-0003-0043 and Control # 041156, with street address of 292 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-24" is a satellite image depicting the location of and area surrounding 292 West Shore Drive. Exhibits "C-24" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

45. The Defendant, Robert Keegan, who is upon information and belief an adult individual, and resident and citizen of Pennsylvania, with an address located at 710 Clove Ln, Moscow, PA 18444; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 1190/0176, and Tax Parcel # 12-0-0003-0044 and Control # 041157, with street address of 294 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-25" is a satellite image depicting the location of and area surrounding 294 West Shore Drive. Exhibit "C-25" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

46. The Defendants, John T Nalevanko and Kathryn D Nalevanko, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 296 W Shore Dr., Lake Ariel, PA 18436-9415; and claim an interest in certain real property near the western shore of Lake

Ariel, through recorded document at Wayne County, DB/PG 5220/0232 and Tax Parcel # 12-0-0003-0045 and Control # 041158, with street address of 296 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-26" is a satellite image depicting the location of and area surrounding 296 West Shore Drive. Exhibits "C-26" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

47. The Defendants, John C Winn and Marnel M Winn, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of South Carolina, with an address located at 2513 Deer Walk Way, Mount Pleasant, SC 29466-8143; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4764/0290, and Tax Parcel # 12-0-0003-0047, 12-0-0003-0048- and Control # 041160, and #110161 with street address of 300 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibits "C-27" and "C-28" are satellite images depicting the location of and area surrounding 300 West Shore Drive. Exhibits "C-27" and "C-28" are for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

48. The Defendant, Peter Lombardi, who is upon information and belief an adult individual, and resident and citizen of Pennsylvania, with an address located at 406 Monocacy Trl, Spring Grove, PA 17362-1400; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 0957/0124, and Tax Parcel # 12-0-0004-0015 and Control # 041177, with street address of 110 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-29" is a satellite image depicting the location of and area surrounding 110 West Shore Drive. Exhibit "C-29" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

49. The Defendants, Erik Gutt and Barbara Gutt, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 121 Caspian LN, Norristown, PA 19403; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 3027/0176 and Tax Parcel # 12-0-0004-0017 and Control # 041179, with street address of 120 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-30" is a satellite image depicting the location of and area surrounding 120 West Shore Drive. Exhibits "C-30" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

50. The Defendants, Steven Kowalczyk and Karen Barillo, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 2976 Lake Ariel HWY, Honesdale, PA 18431-2419; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 0509/0299 and Tax Parcel # 12-0-0004-0020 and Control # 041182, with street address of 148 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-31" is a satellite image depicting the location of and area surrounding 126 West Shore Drive. Exhibits "C-31" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

51. The Defendant, Regina Clauss, who is upon information and belief adult individual, and resident and citizen of Pennsylvania, with an address located at 1304 Lake Ariel HWY, Lake Ariel, PA 18436-9438; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 2410/0080, and 0523/0478, Tax Parcel # 12-0-0004-0023, 12-0-0004-0021- and Control # 041185, and #110183 with street address of 1304 Lake Ariel HWY, Lake Ariel, PA 18436-9438. Attached hereto as Exhibits "C-32" and "C-33" are satellite images depicting the location of and area surrounding 1304 Lake Ariel HWY. Exhibits "C-32" and "C-33" are for illustrative purposes only and

the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

52. The Defendants, Hai Y Wang and Chaun Zhang, who are upon information and belief adult individuals, and residents and citizens of the Commonwealth of Pennsylvania, with an address located at 6436 Eichler Cir, Coopersburg, PA 18036; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 4011/0267, and 3937/0174 Tax Parcel # 12-0-0004-0025, 12-0-0004-0026, and Control # 041187, and #041188 with street address of 140 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibits “C-34” and “C-35” are satellite images depicting the location of and area surrounding 140 West Shore Drive. Exhibits “C-34” and “C-35” are for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

53. The Defendants, Michael Krawczyk and Deborah C Krawczyk, who are upon information and belief adult individuals, and residents and citizens of Virginia, with an address located at 9602 Shannon Lane, Manassas, VA 20110; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 3071/0287 and Tax Parcel # 12-0-0004-0028 and Control # 041190, with street address of 148 West Shore Drive,

Lake Ariel, PA 18436. Attached hereto as Exhibit "C-36" is a satellite image depicting the location of and area surrounding 148 West Shore Drive. Exhibit "C-36" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

54. The Defendants, Timothy Clauss and Rosanne Clauss, who are upon information and belief adult individuals, and residents and citizens of Pennsylvania, with an address located at 152 W Shore Dr., Lake Ariel, PA 18436; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5366/0290 and Tax Parcel # 12-0-0004-0029 and Control # 041191, with street address of 152 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-37" is a satellite image depicting the location of and area surrounding 152 West Shore Drive. Exhibit "C-37" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

55. The Defendant, Stoodley-Merritt Family Revocable Trust is an entity, that is upon information and belief comprised of adult individual members, and has a registered address located in Massachusetts at C/O Jane Merritt, 14 Fiske St., Worchester, MA 01602-2937; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG

4418/0190, and Tax Parcel # 12-0-0004-0030 and Control # 041192, with street address of 156 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-38" is a satellite image depicting the location of and area surrounding 156 West Shore Drive. Exhibit "C-38" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

56. The Defendant, Lake Ariel Family Partnership, LP, is an entity, that is upon information and belief comprised of adult individual members, and has a registered address located in Pennsylvania at C/O Susan Mccabe, 519 Hawthorne PL, Berwyn, PA 19312; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 2895/0292, and Tax Parcel # 12-0-0004-0032 and Control # 041194, with street address of 168 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-39" is a satellite image depicting the location of and area surrounding 168 West Shore Drive. Exhibit "C-39" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

57. The Defendant, Elizabeth Kelly, who is upon information and belief an adult individual, and resident and citizen of Pennsylvania, with an address located at 100 North Hampton St. Apt 505, Easton, PA 18042; and claims an interest in certain

real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 5081/0277, and Tax Parcel # 12-0-0004-0032 and Control # 041194, with street address of 172 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-40" is a satellite image depicting the location of and area surrounding 172 West Shore Drive. Exhibit "C-40" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

58. The Defendant, Isaacs Family Revocable Trust, is an entity, that is upon information and belief comprised of adult individual trustees, and has a registered address located in Maryland at 2501 Carrolton Rd, Annapolis, MD 21403; and claims an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 6587/0048, and Tax Parcel # 12-0-0004-0035 and Control # 041197, with street address of 176 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-41" is a satellite image depicting the location of and area surrounding 176 West Shore Drive. Exhibit "C-41" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

59. The Defendants, Charles Isaacs and Paula Isaacs, are upon information and belief trustees of the Isaacs Family Revocable Trust, they are upon information

and belief adult individuals, and have a registered address located in Maryland at 2501 Carrolton Rd, Annapolis, MD 21403; and claim an interest in certain real property near the western shore of Lake Ariel, through recorded document at Wayne County, DB/PG 6587/0048, and Tax Parcel # 12-0-0004-0035 and Control # 041197, with street address of 176 West Shore Drive, Lake Ariel, PA 18436. Attached hereto as Exhibit "C-41" is a satellite image depicting the location of and area surrounding 176 West Shore Drive. Exhibit "C-41" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

## JURISDICTION

60. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties, and the amount in controversy, which exceeds seventy-five thousand dollars ($75,000.00) as against each Defendant.

61. The Plaintiffs reside and are domiciled in New Jersey. The Defendants, upon information and belief, each reside in or are domiciled in a state other than New Jersey and thus the parties are completely diverse.

## BACKGROUND AND GENERAL FACTS

62. For over one hundred fifty (150) years people have been making their way to the Pocono Mountains region of Northeastern Pennsylvania to enjoy the beautiful waters of Lake Ariel. Lake Ariel is a natural, deep, spring-fed lake with a long, rich history as a resort area.

63. Lake Ariel is less than twenty (20) miles from Scranton, and the lake was and is one of the most desirable locations for summer, lake homes in Northeastern Pennsylvania.

64. In or about 1964, ALO through various transactions claimed ownership of Lake Ariel and certain adjacent property. Today, the waters of Lake Ariel remain under the private control of ALO, which is a for-profit entity.

65. The Plaintiffs began visiting Lake Ariel as young adults in or about early 1985.

66. Lake Ariel is a special place. Lake Ariel is a place for which Plaintiffs have deep fondness, and where they experienced a lifetime of memories.

67. Indeed, it is impossible to tell the story of Nancy Asaro and Lori Dring and their family without including their love for Lake Ariel, the community, and the many friendships and positive relationships that they cultivated there over the years.

68. Likewise, it would not be possible to explain the history of the last thirty (30) years at Lake Ariel without reference to Nancy, Lori, and the Asaro family.

69. Unfortunately, not all the experiences at Lake Ariel have been positive for the Asaros.

70. The instant suit involves property rights to a parcel of land owned in fee by Plaintiffs. That parcel, the West Shore Parcel, was at times past referred to as "the Strip" and "the snake property." However, it is anything but a mere strip. Rather, the West Shore Parcel is substantial in area and width. The West Shore Parcel consists of nearly two (2) acres; stretches for over a mile; and averages between 14 and 15 feet in width. The shape of the West Shore Parcel or its boundaries are set by reference to the elevation of the historical high and low water marks on Lake Ariel.

71. This lawsuit is the culmination of many years of litigation, during which Plaintiffs Asaro and Dring were repeatedly sued by ALO because of Plaintiffs' attempts to gain access to Lake Ariel and ALO's attempts to deny Plaintiffs access to the lake.

72. For decades, ALO engaged in litigation against Plaintiffs because Plaintiffs defended their rights to use and enjoy their land and opposed ALO's unilateral and arbitrary denial of access to the lake or attempts to restrict Plaintiffs' use and enjoyment of their property.

73. ALO has engaged in decades of litigation against Plaintiffs. Upon information and belief, ALO funded this relentless litigation with the fees and dues

it collected in exchange for access to Lake Ariel. ALO sells or leases lake access for an annual fee and charges fees to those with nearby property for the use of docks, boathouses, and boats on Lake Ariel.

74. Indeed, though not a defendant in this litigation, ALO's conduct is culpable. However, it is the Defendants' continued actions that left Plaintiffs no choice but to protect their interests through this litigation.

75. The named Defendants in this action are part of a larger group of individuals who claim a possessory, if not ownership, interest in properties that are situated to the west of West Shore Drive near Lake Ariel.[4]

76. Over the decades, ALO repeatedly organized, funded, and instigated lawsuits against Dring/Asaro brought in the name of certain leaseholders with interests in leased lots along West Shore Drive. In the various lawsuits, the leaseholders were represented jointly by counsel for ALO.

77. ALO has, upon information and belief, dedicated funds collected from Defendants (and others who pay ALO for access to the lake) to pay legal fees rather than maintain Lake Ariel.

[4] It should be noted here that Defendants lease their respective lots and do not own their lots that border West Shore Drive in fee. Defendants largely claim their interests in the lots in the form of leasehold interests and not outright ownership.

78. Upon further information and belief, fees and/or funds collected from Defendants (and more generally those who pay for access to the lake) were to be used primarily, if not exclusively, for the maintenance and upkeep of Lake Ariel.

79. Upon information and belief, the truth of Plaintiffs' intentions for their land never reached Defendants, those with lots on the West Shore, or the Lake Ariel community generally, because the litigation with ALO hindered the Plaintiffs' ability to communicate with the Lake Ariel community.

80. Upon information and belief, ALO controlled the flow of information concerning litigation and skewed that information to suggest that Plaintiffs intended to develop their property in a harmful manner that would overcrowd and diminish the waters of Lake Ariel. Nothing could be further from the truth. Plaintiffs first began visiting Lake Ariel in 1985 when they were just young adults. Plaintiffs love the lake and have strong friendships with numerous other families who live near or own property at Lake Ariel.

81. On December 11, 1984, Nancy and Lori's parents Joseph and Elaine Asaro purchased a summer home near the lake. The parcel purchased by Joseph and Elaine Asaro is not part of the property that is the subject of the instant litigation. See Exhibit "A" generally for an overview of the location of Joe and Elaine Asaro's lake house.

82. Joe and Elaine Asaro owned a home at Lake Ariel from 1984 until their unfortunate and untimely passing in August 2020. Over the course of more than thirty (30) years, Joe and Elaine Asaro made renovations and continuously improved their home.

83. For about the first five (5) years things went well. The Asaro family enjoyed the lake house and regularly used Lake Ariel for recreational activities such as boating, etc. However, in or about 1989-1990, ALO sought to limit Joe and Elaine Asaro's use of, and direct access to, Lake Ariel through their adjoining property.[5]

84. Joseph and Elaine Asaro were sued for the first, and not the last, time by ALO. This foretold of the struggles to come.

85. The litigation between ALO and Joe and Elaine Asaro resolved with an October 1990 ***recorded*** settlement agreement.

86. Following the resolution of that litigation the Asaros became very involved in the community.

---

[5] In addition to being sued by ALO, in the summer of 1990 the Asaros experienced the arbitrary aggression of ALO and its management for the first time. While enjoying the lake as they normally did, on their family boat, all four (4) of the Asaros were accosted by the then lake manager, who pulled his boat alongside theirs and through a bullhorn shouted – "YOU ARE TRESPASSING ON THE LAKE AND MUST LEAVE IMMEDIATELY." Attached here to as Exhibit "K" is a letter from Joseph and Elaine Asaro to all ALO shareholders concerning the 1989 litigation that was settled in 1990. In addition, attached hereto as Exhibit "L" is a letter from the ALO's former attorney attempting to justify why both he and the ALO Board previously refused to explain the litigation with the Asaros as requested by numerous ALO shareholders and members of the community.

87. At one time Joseph Asaro was even a member of the governing body of ALO (the ALO Board).

88. Joseph and Elaine Asaro did many things as active members of the Lake Ariel community, such as contributing to the annual 4th of July fireworks display, and the annual children's fishing derby, as well as participating in the annual boat parade.

89. Concerned for the environmental health of the lake generally, Joe Asaro successfully persuaded ALO to stop using oil on the dirt roads near Lake Ariel in favor of more environmentally friendly crushed rock.

90. However, this period of relative harmony did not last. Joe Asaro did not care for the way that ALO was managed and ceased his involvement with the ALO Board in the late 1990s.

91. Specifically, Mr. Asaro felt that the ALO Board was unfair to some neighbors, while treating others more favorably or preferentially.

92. By way of example, upon information and belief, in one instance a leaseholder in her seventies put her home and lot up for sale and the ALO stripped her lot of any associated rights of use or access to Lake Ariel. Upon information and belief, this diminished the value of her property.

PLAINTIFFS PURCHASE PROPERTY AND ALO SUES

93. In 1996, Plaintiffs purchased in excess of fifty-two (52) acres that adjoin Lake Ariel and/or Mud Pond, and in 2001, Plaintiffs purchased an additional thirty-four (34) acres, and finally, later in 2001, Plaintiffs purchased an additional 1.9 acres (the West Shore Parcel). Today, Plaintiffs' combined properties total in excess of eighty-nine (89) acres that abut and share a common property boundary of over 5,800 feet with the waters of Lake Ariel and Mud Pond.

94. In 1999, ALO sued Plaintiffs in the Wayne County Court of Common Pleas to, *inter alia*, attempt to prevent Plaintiffs from accessing the waters of Lake Ariel from their property. That action was styled: *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 188-C-1999 (Wayne Co. CP)("Original Action"), and was ultimately removed to the United States District Court for the Middle District of Pennsylvania on February 15, 2001, and became styled *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 3:01-cv-00294-ARC ("Dring I").[6]

95. Following the commencement and removal of the Original Action, in 2001, Plaintiffs purchased the West Shore Parcel, which as set forth above is a 1.92 acre parcel that is over a mile (5,800 ft) in length, and averages between fourteen

[6] As set forth in greater detail below, ALO caused a group of neighbors with leasehold interests in lots along West Shore Drive to sue Dring/Asaro in a second, separate state court action. That action was stayed by this Court and the claims and defenses in that second state court action were consolidated into Dring I, as those leaseholders were added as counterclaim defendants in Dring I.

(14) and fifteen (15) feet in width, but at its widest is approximately twenty-eight (28) feet wide and at its most narrow location is about five (5) feet wide.[7]

96. The West Shore Parcel shares a common property boundary with Lake Ariel for a long distance, and Defendants in this action, and others similarly situated, cross the West Shore Parcel in order to traverse unimpeded on the <u>most direct</u> path from the margin of their respective leasehold lots to the waters of Lake Ariel.

97. ALO organized a group of seventy-one (71) leaseholders with leasehold interests in lots along West Shore Drive to commence a second state court action in the Wayne County Court of Common Pleas against, *inter alia*, Plaintiffs on June 19, 2002, and that matter was styled: *Ariel Land Owners, Inc., et al v. Nancy Asaro, et al*., 248-CV-2002 (Wayne Co. CP) ("Second Action"). Thereafter, following significant motion practice the Second Action was stayed by this Honorable Court with Order dated August 2, 2004. See, *Ariel Land Owners, Inc. v. Lori Dring*, 3:01-cv-00294-ARC, Doc. 96 (Memo. Op and Order August 2, 2004, Caputo, J).

98. As a result of Judge Caputo's Order of August 2, 2004, Dring/Asaro were permitted to amend their Counterclaim in <u>Dring I</u> and to join the so-called

[7] The West Shore Parcel is the property at the center of this suit commenced in 2025, because, *inter alia*, Defendants in this action cross the West Shore Parcel in order to traverse from their respective leasehold properties to the lake. Defendants could go around the West Shore Parcel and access the lake without entering or touching Plaintiffs' property.

"property owners" (i.e., plaintiffs in the Second Action with leasehold interests in lots on West Shore Drive) as new counterclaim defendants in Dring I.

99. Thereafter, following the removal of the Original Action, and the stay of the Second Action, the claims and defenses of (1) ALO as plaintiff/counterclaim defendant, (2) the so-called "property owners" as counterclaim defendants, and (3) Dring/Asaro as defendants/counterclaim plaintiffs were consolidated and litigated in Dring I. Following consolidation Dring I was styled: *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., Karl R. Iffland and Alice L. Iffland, et al.*, Docket No.: 3:01-cv-00294-ARC.

100. Thus, in Dring I, following consolidation, Dring/Asaro became defendants/counterclaim plaintiffs against ALO and about seventy (70) so-called "property owners". In Dring I the counterclaim defendants, and so-called "property owners," sought prescriptive rights/easements over the West Shore Parcel. On April 5, 2005, Dring/Asaro filed their Third Amended Counterclaim in Dring I. The Third Amended Counterclaim included Count V against the so-called "property owners" for, *inter alia*, trespass over the West Shore Parcel. Count V of the Third Amended Counterclaim included, *inter alia*, the following:

> 61. Additionally, the PROPERTY OWNERS have wrongfully possessed, traversed and/or constructed structures upon the [West Shore Parcel] owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] without the permission of Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] or their predecessors in title. Such

> action on the part of the PROPERTY OWNERS constitutes a continuing wrongful trespass upon the lands owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring].
>
> 62. Moreover, upon information and belief, some of the PROPERTY OWNERS described herein have wrongfully trespassed upon the lands owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] without any lease, assignment or agreement between the PROPERTY OWNER and Plaintiff. Such action on the part of the PROPERTY OWNER constitutes a wrongful trespass upon the property owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring].

See Third Amended Counterclaim filed April 5, 2005, in Dring I, *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., Karl R. Iffland and Alice L. Iffland, et al.*, Docket No.: 3:01-cv-00294-ARC at Doc. 156 Pg. 33 of 36.

101. Thereafter on April 22, 2005, the counterclaim defendants in Dring I filed an Answer with Affirmative Defenses to the Third Amended Counterclaim. The Answer with Affirmative Defenses to the Third Amended Counterclaim included, *inter alia*, the following on behalf of the so-called "property owner" counterclaim defendants:

> 75. The Property Owners have adversely, openly, notoriously, continuously and uninterruptedly possessed, traversed and constructed structures on the property described in the Wells and RPI Deeds and, therefore, have a prescriptive easement to continue to do so.

See, Dring I, Docket No.: 3:01-cv-00294-ARC at Doc. 162, Answer and With Affirmative Defenses to Third Amended Counterclaim filed April 22, 2005.

102. The Defendants in this action do not have prescriptive rights, easements, and/or rights of any kind to use or occupy the West Shore Parcel. Though the counterclaims in Dring I as against the so-called "property owners" were never litigated to conclusion, the Dring I counterclaim defendants then, and the Defendants now, have no claim of right to use or occupy the West Shore Parcel that is owned in fee by Dring/Asaro.

103. Ultimately, the claims and/or defenses raised in Dring I by the so-called "property owner" counterclaim defendants were released forever. (Defendants in this mater were either parties to Dring I or are successors of parties to Dring I.)

104. Prior to the conclusion of the bench trial in Dring I, on or about August 28, 2006, (1) the Dring I counterclaim defendants, i.e., the so-called "property owners", and (2) the Dring I defendants/counterclaim plaintiffs, Lori Dring and Nancy Asaro, and (3) the Dring I plaintiff/counterclaim defendant, ALO, all entered into a partial Settlement Agreement. Said agreement as amended in August 2007 is attached hereto as Exhibit "M" ("2006 Agreement").

105. The Dring I so-called "property owner" counterclaim defendants, did not have and could not substantiate claims for prescriptive rights in the West Shore Parcel. Nevertheless, Dring/Asaro and the so-called "property owner" counterclaim

defendants in Dring I sought to resolve their dispute as to ***prior*** trespass claims through the attached 2006 Agreement. This did not include any future claims or claims for continuing trespass.

106. Even absent a release of any kind, the Defendants in this action, and the Dring I so-called "property owner" counterclaim defendants, cannot and could not have substantiated a claim for prescriptive rights of any kind as against the West Shore Parcel. With the 2006 Agreement – the Dring I so-called "property owner" counterclaim defendants released and waived the right to bring any claims against Dring/Asaro for prescriptive rights or easements over the West Shore Parcel.[8]

107. Unfortunately, ALO breached the 2006 Agreement because, *inter alia,* it did not actually have title to Cardinal Lane and therefore could not deliver to Asaro/Dring instruments in recordable form granting a permanent easement over Cardinal Lane as was required by ¶ 5 of the 2006 Agreement.[9] As part of the 2006 Agreement, ALO agreed, *inter alia*, to grant Asaro/Dring a permanent easement over a parcel of land know as Cardinal Lane. ALO even provided assurances that it owned Cardinal Lane as part of the 2006 Agreement. However, ALO did not own Cardinal

---

[8] The late Honorable A. Richard Caputo, United States District Judge ("Judge Caputo"), held that "[t]he release therefore bars the Property Owners' claims in Count Two of their Amended Complaint [for prescriptive easements], and judgment will be entered in Dring's favor." *Gillespie v. Dring*, 350 F.Supp.3d 333, 340 (M.D. Pa. 2018), *aff'd*, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).
[9] See*, Gillespie v. Dring*, 350 F.Supp.3d 333, 336 (M.D. Pa. 2018), *aff'd*, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

Lane and could not fulfill its obligation to provide an easement over same in recordable form to Dring/Asaro.

108. Ultimately, due to ALO's breach, the 2006 Agreement was the subject of further litigation in two matters before this Honorable Court: (1) *Gillespie, et al. v. Dring*, 3:15-cv-00950- ARC (commenced, May 15, 2015) ("Gillespie"); and (2) *Dring v. Ariel Land Owners, Inc.*, 3:15-cv-00478-ARC (commenced, March 10, 2015)("Dring II").

109. The plaintiffs in Gillespie ("Gillespie Plaintiffs") were a group of over sixty (60) so-called "owners" (really leaseholders) of interests in lots on West Shore Drive. Some Gillespie Plaintiffs were Dring I counterclaim defendants and parties to the 2006 Agreement. Some Gillespie Plaintiffs were not parties to Dring I and were not parties to the 2006 Agreement but claimed to have rights under the 2006 Agreement.

110. Gillespie Plaintiffs sued Dring/Asaro, *inter alia*, (1) to compel conveyance of written easements over the West Shore Parcel under the 2006 Agreement; and (2) alternatively for easements by prescription over the West Shore Parcel.[10]

[10] The Defendants in this case were either parties to Dring I and Gillespie or are their successors.

111. Dring/Asaro brought counterclaims for trespass in Gillespie. Dring/Asaro's counterclaims for trespass came nearly nine (9) years after the 2006 Agreement was signed, against, *inter alia*, the Defendants in ***this*** action or their predecessors. The Defendants **in this action** and/or their predecessors did not move to dismiss Dring/Asaro's 2015 trespass counterclaim based on the theory of release. The Defendants **in this action** and/or their predecessors did not move for summary judgment on Dring/Asaro's 2015 trespass counterclaim based on the theory of release. The Defendants **in this action** and/or their predecessors did not even raise release as an affirmative defense to the 2015 trespass counterclaim. See, Gillespie, Docket No.: 3:15-cv-950, Doc. 26, Answer of Plaintiffs Marjorie Gillespie, et al., to Counterclaim of Defendants, Lori Dring and Nancy Asaro filed December 29, 2015.

112. On October 10, 2018, Judge Caputo granted summary judgment in favor of Dring/Asaro on all of Gillespie Plaintiffs' claims. *Gillespie v. Dring*, 350 F. Supp. 3d 333 (M.D. Pa. 2018). As a result, only Dring/Asaro's Counterclaim for Trespass remained unresolved, and Judge Caputo put the trial of Dring/Asaro's Trespass Counterclaim on the April 2019 Trial Calendar. [Gillespie, Docket No.: 3:15-cv-950, Doc. 110, Order of November 20, 2018, Caputo, J. – Denying Gillespie Plaintiffs' Motion for Reconsideration and placing trial of Counterclaim on April 2019 Trial List].

113. On April 20, 2019, following months of negotiation, Gillespie Plaintiffs and Dring/Asaro entered into a partial settlement and release, as memorialized in an Agreement and Release ("2019 Agreement"). Attached hereto as Exhibit "V" is a copy of the 2019 Agreement.

114. The 2019 Agreement was executed on April 20, 2019, six (6) months after Judge Caputo granted Dring/Asaro summary judgment on October 10, 2018. Thus, with the 2019 Agreement, Dring/Asaro and ***Gillespie Plaintiffs*** **agreed** to dismissal of Dring/Asaro's Counterclaim for Trespass ***without prejudice*** [¶1], and further agreed to the following **partial** release:

> 2. ***Without releasing*** any of their claims for any ***continuing trespass***, Dring and Asaro hereby release Plaintiffs for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur ***prior to April 1, 2019***.

[Exhibit "V," 2019 Agreement ¶2]

115. In exchange for the foregoing partial release, Gillespie Plaintiffs acknowledged Dring/Asaro's ownership of the West Shore Parcel [Exhibit "V" at ¶7] and Gillespie Plaintiffs further ***agreed*** that Dring/Asaro reserved the rights to pursue trespass claims against Gillespie Plaintiffs or **their successors-in-interest** or **successors-in-title** (Defendants in this action) for trespass over the West Shore Parcel committed *on or after April 1, 2019*, and to pursue any claims for any

*continuing trespass* which may have commenced *prior to April 1, 2019*. [Exhibit "V" at ¶3].

116. Specifically, the 2019 Agreement states, in relevant part, the following:

> NOW THEREFORE, intending to be legally bound, ***[Gillespie] Plaintiffs*** and Dring and Asaro, through their respective counsel, **agree on the following**:
>
> […]
>
> 3. Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore [Parcel] that may be committed by [Gillespie] **Plaintiffs** or **their successors-in-interest** or **successors-in-title** *on or after April 1, 2019*, and to pursue any claims for any *continuing trespass* which commenced *prior to that date*.

[Exhibit "V," 2019 Agreement ¶3, emphasis supplied].

117. The 2019 Agreement expressly states that counsel for the parties have the authority to enter into the Agreement and Release on behalf of their respective clients. [Exhibit "V" at ¶12].[11] The 2019 Agreement also contains an integration clause – stating that it is the entire agreement and that it may only be amended by a signed writing. [Exhibit "V" at ¶ 11]. Finally, the 2019 Agreement states that "[t]he parties agree that the Release set forth in Paragraph 2, above, shall not be effective

[11] Importantly, the 2019 Agreement is signed by the exact same attorneys who signed the 2006 Agreement. The late Michael Profita, Esquire, signed both agreements for Dring/Asaro. Joseph A. O'Brien, Esquire, signed both the 2006 Agreement and the 2019 Agreement on behalf of his clients.

unless and until the Court approves the Stipulated Order attached hereto as Exhibit 'A'." [Id ¶13].

118. The release of only pre-April 1, 2019, trespass claims (specifically not releasing pre-April 1, 2019 claims for continuing trespass) as described in ¶ 2 of the 2019 Agreement only became effective on April 23, 2019, when Judge Caputo entered an Order in Gillespie that approved the proposed stipulated order – and thereby dismissed Dring/Asaro's Counterclaim without prejudice and permitted Dring/Asaro to file an application for Attorneys' Fees within thirty (30) days. [Gillespie, Docket No.: 3:15-cv-950, Doc. 114, Order signed by Judge Caputo 04/23/2019, attached hereto as Exhibit "W"].

119. The 2019 Agreement specifically reserves and does not release continuing trespass claims. Moreover, it is simply not plausible, in the context of the subsequent 2019 Agreement, to read the 2006 Agreement as either: (a) a release future claims for trespass, or (b) as intended to release future claims for trespass. The 2019 Agreement and the 2006 Agreement were negotiated and signed by the same attorneys.

120. Under no circumstances would anyone who believed themselves released from all future trespass claims in 2006 ever enter into a subsequent agreement expressly reserving the rights in an acknowledged landowner to pursue future claims for trespass that occur after April 1, 2019, and/or to pursue all

continuing trespass claims that began prior to April 1, 2019. The 2019 Agreement is a clear and unequivocal manifestation of the understating of Dring/Asaro and Gillespie Plaintiffs that the 2006 Agreement only released Dring/Asaro's prior and not future claims for trespass and that the 2006 Agreement did not release any claims for continuing trespass.

121. On June 13, 2019, Dring/Asaro filed their motion for attorney's fees as prevailing parties in Gillespie. [Gillespie, Docket No.: 3:15-cv-950, Doc. 119-121, Motion, Proposed Order, and Brief in Support of Motion for Attorneys' Fees, filed on June 13, 2019.]

122. In August 2019, Gillespie Plaintiffs[12] attached the 2019 Agreement and relied on the 2019 Agreement in their briefing in opposition to Dring/Asaro's Motion for Attorneys' Fees. On August 1, 2019, Gillespie Plaintiffs filed a Brief in Opposition [Gillespie, Docket No.: 3:15-cv-950, Doc. 128] to Dring/Asaro's Motion for Attorneys' Fees. Gillespie Plaintiffs attached the 2006 Agreement as an Exhibit to their Opposition at Doc. 128-1. **Gillespie Plaintiffs attached the 2019 Agreement as an Exhibit to their Opposition at Doc. 128-2.** [Gillespie, Docket No.: 3:15-cv-950, Doc. 128-1 and 128-2.] Gillespie Plaintiffs' Brief in Opposition to Dring/Asaro's Motion for Attorneys' Fees, expressly states that the 2019

[12] Defendants in this matter were either parties to Gillespie or are the successors of parties to Gillespie.

Agreement only released claims for trespass (not continuing trespass) that occurred before April 1, 2019. [Gillespie Plaintiffs' Brief in Opposition to Dring/Asaro's Motion for Attorneys' Fees, Gillespie, Docket No.: 3:15-cv-950, Doc. 128 at p. 10 of 35, filed on August 1, 2019, is attached hereto as Exhibit "X".] **This is a direct admission by Defendants.**[13]

123. This Honorable Court held that Gillespie Plaintiffs were without the ability to bring prescriptive claims against the Plaintiffs' ownership of the West Shore Parcel. This was determined by the late Honorable A. Richard Caputo, United States District Judge, with an opinion entered on October 10, 2018, "The release therefore bars the Property Owners' claims in Count Two of their Amended Complaint [for prescriptive easements], and judgment will be entered in Dring's favor." *Gillespie v. Dring*, 350 F.Supp.3d 333, 340 (M.D. Pa. 2018), aff'd, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

124. Judge Caputo's October 10, 2018, Opinion was upheld by the Third Circuit on appeal, where the appellate court held as follows:

> While the Property Owners appeal to the principles of equity, *Gillespie* Reply Br. 18–19, we cannot, as Judge Caputo succinctly explained, "rewrite the agreement to shift the forfeiture from the Property Owners to Dring

[13] Importantly, the 2019 Agreement actually preserves both past and future claims, because it was signed on April 20, 2019, did not become effective until April 23, 2019, and only releases claims for trespass (not continuing trespass) up to April 1, 2019 – so there are 22 days (between April 1, 2019 and April 23, 2019) of past trespass claims that are also not released under the 2019 Agreement.

> when ALO is the only party in breach." *Gillespie* App. 6. Because there is no disputed issue of material fact that Dring's obligation to grant the Property Owners an easement over the West Shore Strip was contingent on ALO's performance, we will affirm. FN7
>
> FN7 Conceding that this argument was forfeited because it was not raised below, the Property Owners nevertheless ask us to hold, for the first time on appeal, that the Settlement Agreement grants them an easement over the West Shore Strip as a matter of law. *See Gillespie* Reply Br. 5–9. We decline to consider this because no "exceptional circumstance[]" requires us to consider this otherwise forfeited argument. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). While we agree with the District Court that the plain language of the Settlement Agreement released the Property Owners' prescriptive easement claim, *see Gillespie App. 88*, the District Court was never asked to consider, nor did it decide, whether Dring, in the Settlement Agreement, released future trespass claims against the Property Owners. ***See Gillespie App. 6–9***. ***<u>We leave it for a trial court to consider these issues in the first instance.</u>***

*Gillespie v. Dring*, 19-2073, 2022 WL 1741888, at *4 (3d Cir. May 31, 2022) (emphasis supplied).

125. Based on the foregoing, and as set forth in greater detail below, it is clear that <u>Gillespie</u> Plaintiffs and the Defendants in this matter do not have a right by chain of title or deed to use or occupy the West Shore Parcel. The ALO does not have title to the West Shore Parcel. The Defendants in this case cannot claim prescriptive rights to use or occupy the West Shore Parcel. Moreover, the claims for

prescriptive rights or easements by the Dring I counterclaim defendants, and Gillespie Plaintiffs, as a group, were released by the 2006 Agreement.

126. Defendants' conduct and the conduct of their predecessors-in-interest and their predecessors-in-title, exposes their absolute understanding that Dring/Asaro did not release future claims with the 2006 Agreement. Not only is this evident by the 2019 Agreement, but also by the subsequent conduct of the Defendants and their predecessors-in-interest and their predecessors-in-title, i.e., Gillespie Plaintiffs.

127. On October 17, 2019, Judge Caputo awarded Dring/Asaro $282,383.93, in attorneys' fees as prevailing parties under Paragraph 14 of the 2006 Agreement. [Order Awarding Attorneys' Fees, Gillespie, Docket No.: 3:15-cv-950, Doc. 136, entered October 17, 2019.]

128. On November 5, 2019, Attorney O'Brien, on behalf of Gillespie Plaintiffs, filed a Notice of Appeal of the award of attorneys' fees. [Notice of Appeal, Gillespie, Docket No.: 3:15-cv-950, Doc. 137, entered November 5, 2019.]

129. On November 26, 2019, Attorney O'Brien sent a letter, and litigation update, generically addressed to "Dear Lake Residents," that states in part, the following:

> Unfortunately, and as we previously informed you, we were not so successful in the lawsuit instituted [against] Dring and Asaro [by] the West Shore Property Owners. **In that case, Judge Caputo decided in favor of Dring**

**<u>and Asaro concluding that the West Shore Property Owners do not have rights to access Lake Ariel over the west shore strip.</u>**

[Letter and Litigation Update to Lake Residents from Attorney O'Brien, dated November 26, 2019, is attached hereto as Exhibit "Y".] Attorney O'Brien's November 26, 2019, letter to the lake community was in the aftermath of the attorneys' fee award.

130. The foregoing is an unequivocal admission by Defendants through their attorney of exactly what they and everyone else involved with the <u>Gillespie</u> litigation understood to be the result of Judge Caputo's October 10, 2018, Opinion and Order granting summary judgment to Dring/Asaro. Likewise, the foregoing explains, in part, why <u>Gillespie</u> Plaintiffs were willing to and did enter into the 2019 Agreement which specifically reserves and preserves the claims of Dring/Asaro and releases only certain claims accrued prior to April 1, 2019.

131. Paragraph 7 of the 2019 Agreement expressly states that Dring/Asaro own the West Shore Parcel and that any construction on the West Shore Parcel by <u>Gillespie</u> Plaintiffs or their successors-in-interest or successors-in-title is at their own risk.

132. Attorney O'Brien also represented the ALO before and after the execution of the 2019 Agreement. Following the execution of the 2019 Agreement, as of March 2021, the ALO's own building permit type form for permission from

ALO to build docks or boathouses on the margin of Lake Ariel tracked the language of the 2019 Agreement. Specifically, the ALO's form bearing the heading: "Approval Notice for Lake Front Improvements" states that Lori Dring and Nancy Asaro own the West Shore Parcel, and further states that those who build in the area of the West Shore Parcel proceed at their own risk. This form issued by ALO is (pseudo) governmental in appearance, and states the following on the bottom of the first page, in bold, underlined and italicized, text:

- ***West Shore Property Owners are advised that Lori Dring and Nancy Asaro are the owners of a strip of land along the west shore of Lake Ariel between the high water mark and the natural margin of the lake. Any construction within that area is subject to approval of Dring and Asaro. Without such approval, property owners are proceeding at their own risk.***

See Exhibit "N" attached hereto – March 6, 2021 ALO Form.[14]

133. The 2006 Agreement did not release the claims that Plaintiffs bring in this action. The 2019 Agreement expressly preserves and reserves to Dring/Asaro the claims that Plaintiffs bring in this action.

[14] The full scope of Dring/Asaro's ownership of the West Shore Parcel is not completely captured by the description in the ALO form attached as Exhibit "N." Reference here is intended only to show that even ALO acknowledges that Dring Asaro own the West Shore Parcel in fee, the description of the West Shore Parcel in the form is not adopted or incorporated by reference. Rather, it is provided only to show that even the ALO acknowledges Plaintiffs' ownership in fee, etc., and that the building permit tracks the language of the 2019 Agreement.

134. While there was no release of future claims by Dring/Asaro in the 2006 Agreement, Plaintiffs plead in the alternative, without conceding any such release, that Dring/Asaro's claims for continuing trespass beginning at any time and claims for trespass over the West Shore Parcel on or after April 1, 2019 were expressly acknowledged and revived by the 2019 Agreement.

135. Defendants are estopped from arguing or asserting that the 2006 Agreement released the claims that Dring/Asaro bring in this matter. Defendants have waived the argument that the 2006 Agreement released the claims that Dring/Asaro bring in the instant litigation.

136. Sadly, in March 2020, Judge Caputo passed away. Gillespie was reassigned to the Honorable Matthew W. Brann on March 23, 2020. Thereafter, Gillespie Plaintiffs added two new attorneys to their legal team who, between October 2020 and October 2021, sought to have the entire Gillespie matter dismissed and treated as a nullity on jurisdictional grounds. This effort by Gillespie Plaintiffs failed on October 27, 2021. [See, *Gillespie v. Dring*, 3:15-CV-00950, 2021 WL 4989888, at *3 (M.D. Pa. Oct. 27, 2021), Docket No.: 3:15-CV-00950, Doc. 177-178, Opinion and Order entered October 27, 2021, Severing Non-Diverse Party and Denying Rule 60 Relief (Brann, J.)].

137. However, Gillespie Plaintiffs' "Hail Mary" attempt to avoid Judge Caputo's October 10, 2018, Opinion and Order, which Attorney O'Brien described

as a disastrous holding that: "the West Shore Property Owners [i.e., Gillespie Plaintiffs] do not have rights to access Lake Ariel over the west shore strip" is telling. As Judge Brann, noted:

> Now, a moment to discuss the somewhat unusual posture of this motion. More often, it is a plaintiff who seeks to invoke the Court's jurisdiction, and a defendant who tries to point out any defects. But here, it is the Plaintiffs who have brought the issue of diversity to my attention, and the Defendants who aim to preserve jurisdiction and Judge Caputo's rulings. It is not lost on the Court that finding no subject-matter jurisdiction would result in unwinding more than a half-decade of litigation and substantial investments of time and money.

*Gillespie v. Dring*, 3:15-CV-00950, 2021 WL 4989888, at *3 (M.D. Pa. Oct. 27, 2021).

138. Gillespie Plaintiffs spent a year and hundreds, if not thousands, of hours of attorney time and related costs on a Rule 60 Motion seeking to nullify the prior six (6) years of litigation in Gillespie.

139. Defendants, like Gillespie Plaintiffs, know that they have no right to use or occupy the West Shore Parcel. Gillespie Plaintiffs knew that the 2006 Agreement did not and does not bar Dring/Asaro from suing them for trespass, ejectment, or declaratory judgment, and that Gillespie Plaintiffs have no rights to use the West Shore Parcel. Elsewise, Gillespie Plaintiffs never would have invested so much time and so many resources in attempting to nullify Judge Caputo's Order granting summary judgment in favor of Dring/Asaro.

THE LAND AND TITLE

140. Plaintiffs own the West Shore Parcel in fee and that is not in dispute by the parties. For ease of reference attached hereto as Exhibit "A" is a high-altitude photograph showing Lake Ariel and the surrounding areas. Though not to scale, the blue line in this photograph shows the approximate location of the West Shore Parcel, of 1.92 acres. The area outlined in pink shows the over eighty-six (86) acres that are contiguous to the West Shore Parcel owned by Plaintiffs along with lake frontage. The yellow outlined area shows the general area where the lake house purchased by Joe and Elaine Asaro in 1984 is situated. (The yellow line is not intended to reflect any approximate property lines only to reflect the location of the lake house.) Attached hereto as Exhibit "B" is a Location Plan drawing depicting the approximate location of the West Shore Parcel.

141. Plaintiffs are the owners in fee of in excess of eighty-nine (89) acres of land in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania by virtue of two conveyances recorded in the Office of the Recorder of Deeds of Wayne County from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Nancy Asaro and Lori Dring, Grantees. The first conveyance of in excess of fifty-two (52) acres of land took place on or about September 13, 1996, which deed is recorded in Wayne County Deed Book 1176 at page 0197, et seq. and which deed is incorporated herein by

reference, attached hereto, made a part hereof and marked as Exhibit "O". The second conveyance of in excess of thirty-four (34) acres of land took place on or about July 12, 2001, which deed is recorded in Wayne County Deed Book 1815, at Page 0149, et seq., a copy of which is incorporated herein by reference, attached hereto, made a part hereof and marked as Exhibit "P".

142. The above parcels of property are contiguous and were once part of a single tract of land owned by "George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder." Both properties have now been merged as one parcel, owned now in fee by Plaintiffs.

143. Plaintiffs are the owners in fee of the lands lying between the lands described in the Deed referenced in Paragraph 141 above and the "historic margin of said bodies of water known as Marsh Pond [now Mud Pond] and Jones Pond [now Lake Ariel] and the channel or stream connecting them" by virtue of the Corrective Deed dated August 25, 1998 from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Plaintiffs and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 1418 at page 139, et seq., which is incorporated herein by reference and is attached hereto and made a part hereof and labeled Exhibit "Q".

144. The description of the lands owned in fee by Plaintiffs pursuant to the Deeds attached as Exhibits "O" and "Q" is as follows:

BEGINNING at the point of intersection of the 41s t bearing and distances of the 1423.5 elevation line traverse and the extension of line number 1 of the Dring and Asaro Tract as described in Deed Book Volume 1176 at page 0197; thence South 17 degrees 39 minutes 22 seconds East 5.35 feet to an original corner in the said Dring and Asaro Tract; thence along the boundary of the lands of the Dring and Asaro Tract the following nineteen courses and distances (bearings of the magnetic meridian as established by the Little Lake Development survey):

1) South 17 degrees 39 minutes 22 seconds East 299.13 feet to a corner;
2) North 89 degrees 45 minutes 26 seconds West 780.83 feet to a corner;
3) North 53 degrees 52 minutes 12 seconds West 487.83 feet to a corner;
4) North 72 degrees 45 minutes 09 seconds East 104.27 feet to a corner;
5) North 17 degrees 14 minutes 51 seconds West 264.00 feet to a corner;
6) North 50 degrees 13 minutes 13 seconds West 165.51 feet to a corner;
7) North 14 degrees 55 minutes 15 seconds East 547.01 feet to a corner;
8) North 46 degrees 26 minutes 54 seconds East 640.04 feet to a corner;
9) North 17 degrees 42 minutes 24 seconds West 281.13 feet to a corner;
10) North 64 degrees 04 minutes 23 seconds West 242.00 feet to a corner;
11) North 22 degrees 45 minutes 16 seconds East 204.91 feet to a corner;
12) South 42 degrees 09 minutes 44 seconds East 398.52 feet to a corner;
13) South 10 degrees 46 minutes 42 seconds East 941.63 feet to a corner;

14) North 59 degrees 02 minutes 03 seconds East 1347.25 feet to a corner;
15) North 58 degrees 15 minutes 29 seconds East 848.25 feet to a corner;
16) South 43 degrees 20 minutes 48 seconds East 287.77 feet to a corner;
17) South 44 degrees 18 minutes 20 seconds West 246.28 feet to a corner;
18) South 82 degrees 01 minutes 10 seconds West 98.71 feet to a corner; and

19) South 39 degrees 07 minutes 43 seconds East 281.80 feet passing an iron pin at 238.85 feet to a point of intersection with the 1423.5 elevation line traverse; thence along the 1423.5 elevation line traverse (Bearings of the magnetic meridian as established in the survey of the Little Lake Development) the following forty-one courses and distances:

1) South 43 degrees 58 minutes 58 seconds West 37.81 feet to a corner;
2) South 31 degrees 11 minutes 41 seconds West 58.48 feet to a corner;
3) South 23 degrees 59 minutes 56 seconds West 69.21 feet to a corner;
4) South 42 degrees 25 minutes 05 seconds West 62.22 feet to a corner;
5) South 35 degrees 09 minutes 21 seconds West 71.37 feet to a corner;
6) South 67 degrees 31 minutes 42 seconds West 89.31 feet to a corner;
7) South 59 degrees 31 minutes 51 seconds West 83.31 feet to a corner;
8) South 49 degrees 23 minutes 44 seconds West 72.35 feet to a corner;
9) South 53 degrees 24 minutes 14 seconds West 81.65 feet to a corner;
10) North 85 degrees 01 minutes 01 seconds West 88.90 feet to a corner;

11) South 68 degrees 46 minutes 34 seconds West 84.07 feet to a corner;
12) South 31 degrees 48 minutes 41 seconds West 87.84 feet to a corner;
13) South 31 degrees 20 minutes 44 seconds West 89.58 feet to a corner;
14) South 44 degrees 54 minutes 46 seconds West 11.56 feet to a corner;
15) South 69 degrees 00 minutes 24 seconds West 32.39 feet to a corner;
16) South 81 degrees 06 minutes 13 seconds West 58.32 feet to a corner;
17) South 84 degrees 16 minutes 39 seconds West 104.21 feet to a corner;
18) South 58 degrees 16 minutes 47 seconds West 23.52 feet to a corner;
19) South 89 degrees 27 minutes 29 seconds West 36.47 feet to a corner;
20) South 80 degrees 58 minutes 11 seconds West 16.54 feet to a corner;
21) South 79 degrees 10 minutes 12 seconds West 35.41 feet to a corner;
22) North 42 degrees 45 minutes 31 seconds West 47.34 feet to a corner;
23) North 60 degrees 21 minutes 01 seconds West 38.77 feet to a corner;
24) North 46 degrees 07 minutes 28 seconds West 32.11 feet to a corner;
25) North 43 degrees 06 minutes 19 seconds West 44.30 feet to a corner;
26) North 66 degrees 13 minutes 58 seconds West 100.71 feet to a corner;
27) North 84 degrees 42 minutes 02 seconds West 94.30 feet to a corner;
28) South 74 degrees 01 minutes 25 seconds West 120.70 feet to a corner;
29) South 60 degrees 23 minutes 27 seconds West 122.18 feet to a corner;
30) South 27 degrees 48 minutes 01 seconds West 98.46 feet to a corner;

31) South 19 degrees 13 minutes 07 seconds West 94.00 feet to a corner;
32) South 27 degrees 52 minutes 46 seconds West 7.87 feet to a corner;
33) South 01 degrees 26 minutes 50 seconds East 106.38 feet to a corner;
34) South 23 degrees 26 minutes 43 seconds West 63.45 feet to a corner;
35) South 09 degrees 58 minutes 40 seconds West 76.83 feet to a corner;
36) South 10 degrees 03 minutes 04 seconds West 50.10 feet to a corner;
37) South 46 degrees 29 minutes 53 seconds West 28.53 feet to a corner;
38) South 21 degrees 01 minutes 08 seconds West 61.94 feet to a corner;
39) South 55 degrees 15 minutes 32 seconds West 32.16 feet to a corner;
40) South 12 degrees 38 minutes 59 seconds East 59.90 feet to a corner; and
41) South 84 degrees 58 minutes 33 seconds East 100.83 feet to the point and place of BEGINNING.

145. The description of the lands owned in fee by Plaintiffs pursuant to the Deed attached hereto as Exhibit "P" is as follows:

> BEGINNING at a point in the center line of State Route 191 being the common corner of the lands of Grantors and of George Fitts (D.B. 515, p. 935), thence South 69 degrees 92 minutes 20 seconds East 312.01 feet along the common line of the lands of Fitts to a point; thence South 82 degrees 29 minutes 21 seconds East 239.19 feet; thence South 63 degrees 59 minutes 55 seconds East 590.00 feet; thence South 11 degrees 0 minutes 0 seconds West 160 feet; thence South 79 degrees 0 minutes 0 seconds East 100 feet; thence North 11 degrees 0 minutes 0 seconds East 179.61 feet; thence North 75 degrees 29 minutes 40

> seconds East 878.48 feet to a point in the line of lands of Gasper Polizzi; thence South 41 degrees 56 minutes 04 seconds East 286.54 feet to a point; thence South 59 degrees 40 minutes 13 seconds West 848.25 feet to a point; thence South 60 degrees 26 minutes 47 seconds West 1,347.25 feet to a point for a corner; thence North 09 degrees 21 minutes 58 seconds West 941.63 feet to a point; thence North 40 degrees 45 minutes 0 seconds West 398.52 feet to a point in the center line of State Route 191; thence along the center line of said Road, North 24 degrees 10 minutes 0 seconds East 278.20 feet to the point or place of Beginning.

146. Non-Party, ALO, in the Consolidated Action, claimed/alleged that it held title to certain real property by virtue of that certain deed from A.J. Schrader, et al., to ALO dated April 20, 1964 and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 221 at Page 292, et seq., which is incorporated herein by reference and is attached hereto and made a part hereof and labeled Exhibit "R". Plaintiffs own land that adjoins ALO's property. However, it must be noted that Plaintiffs **do not** accept, do not allege, do not contend, and do not admit, but rather Plaintiffs expressly deny that this document attached as Exhibit "R" provides ALO (or anyone else) with title by deed to the bed of Lake Ariel and/or any other property.

147. This Court has previously ruled and entered judgment against ALO and expressly held that ALO cannot establish title by deed to, *inter alia*, Lake Ariel. Rather, ALO was judicially determined to own the lakebed of Lake Ariel up to the water's natural margin. ALO was also judicially determined to have a prescriptive

right to flood part of Plaintiffs' property, i.e., part of the West Shore Parcel, for part of the year, as explained in greater detail below.

148. Plaintiffs and Non-Party ALO share a common grantor/prior owner in the chain of title of the lands herein above described by the name of "George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder", who, prior to December 13, 1859, was the owner of a tract of land which included the lands owned by the Plaintiffs and ALO.

149. Plaintiffs are owners in fee of real property that shares a common property boundary along the natural margin of Lake Ariel and the interconnecting stream between Lake Ariel and Mud Pond, in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania (i.e., the West Shore Parcel) by virtue of Quit Claim Deeds from two educational institutions. One such Quit Claim Deed ("RPI Deed") transfers a two-thirds undivided interest in the West Shore Parcel from Rensselaer Polytechnic Institute ("RPI") to Plaintiffs. Said Deed is dated November 2, 2001. See RPI Deed, attached hereto as Exhibit "S". The second Quit Claim Deed transfers the remaining one-third undivided interest in the West Shore Parcel to Plaintiffs from Wells College ("Wells") and is dated December 6, 2001 ("Wells Deed"), and was amended with Quit Claim Deed dated October 16, 2020 ("Amended Wells Deed"). See Wells Deed, attached as Exhibit "T" and Amended Wells Deed, attached as Exhibit "U."

150. Pursuant to the Quit Claim Deeds described in paragraph 149 Plaintiffs are the owners in fee of the lands situated between the high-water mark and the natural water mark at certain points, and the highest water mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond, and the interconnecting stream or channel. This is what is referred to as the West Shore Parcel. As such, Plaintiffs are the owners in fee of the West Shore Parcel, including without limitation the Northern Portion and Southern Portion of the West Shore Parcel.

151. ALO and Plaintiffs share a common grantor/prior owner in the chain of title of the land described in paragraph 150 by the name of "George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder", who, prior to December 13, 1859, was the owner of a tract of land which included the lands now owned by the ALO and the Plaintiffs respectively.

152. By Deed dated December 13, 1859, recorded October 16, 1860, in Deed Book 28, Page 36, George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder, deceased, granted and conveyed to Edward W. Weston ("Weston") certain real property in Salem Township (now Lake Township), Wayne County, Pennsylvania. By subsequent Deeds, Weston granted and conveyed portions of the said real property, but did not convey the lands lying between the high water mark and the natural water mark at certain points, and the highest water

mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond, thereby reserving to himself a parcel of land along the western shore of the waters of Lake Ariel and Mud Pond.

153. Naturally, because Weston did not convey the parcel of land which he reserved to himself, upon his death said property passed via the residuary clause of his Last Will and Testament.

154. Upon the death of Weston, one-third (1/3) of the residue of his Estate passed to his son, Charles S. Weston ("Charles Weston"), one-third (1/3) of the residue of his estate passed to his wife, Susan S. Weston, and one-third (1/3) of his estate passed to his daughter, Caroline Weston Bird.

155. Upon the death of Susan S. Weston on March 25, 1916, her interest in the property at issue passed in equal shares to her children, Charles Weston and Caroline Weston Bird pursuant to the terms of her Last Will and Testament.

156. Caroline Weston Bird passed away on October 7, 1931 and, pursuant to the residuary clause of her Last Will and Testament, her interest in the property at issue passed to her brother, Charles Weston.

157. During his lifetime, Charles Weston did not convey the lands lying between the high water mark and the natural water mark at certain points, and the highest water mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond.

158. Upon the death of Charles Weston, two-thirds (2/3) of the residue of his estate passed to RPI, and one-third (1/3) of the residue of his estate passed to Wells pursuant to his Last Will and Testament dated January 5, 1937.

159. ALO owns, though not by Deed or Chain of Title, *inter alia*, the bed of Lake Ariel as determined by this Honorable Court with the Order and Judgment entered on January 18, 2008, as amended by Order of August 13, 2008. That land owned by ALO, i.e., the lakebed, adjoins the property owned by Plaintiffs by virtue of the Wells and RPI Deeds, i.e., the West Shore Parcel. This was affirmed by the Third Circuit by an unpublished Opinion and Order Filed March 15, 2010. The Third Circuit held, in part, as follows:

> With regard to [ALO's] cross appeals, we do not find any merit in their assertions. The District Court properly concluded that [ALO's] ownership of land underneath the lake did not extend beyond the lowest water level of 1423.5 feet. We do not find any evidence to compel a different factual conclusion from that reached by the District Court concerning the lack of proof of ownership of this strip of land in the chains of title presented to the court. Additionally, as we noted earlier, Pennsylvania precedent makes it clear that occasional intentional flooding of certain property is not, of itself, sufficient to establish ownership of that property. *Costello*, 162 Pa. 397, 29 A. 874. We also cannot stretch the reputational evidence to suffice as proof of ownership. For these reasons, we do not find any error in the District Court's decision.
>
> We also agree with the District Court that, beginning with the deed to Joel Jones, dated January 21, 1862, it is clear that the strip of land that is the subject of the present

> litigation was reserved to Edward W. Weston, and that ownership of this strip can be traced to the deed held by Dring and Asaro. Accordingly, the District Court did not err in concluding that Dring and Asaro hold, by record deed, title to the disputed strip of land between the high and low water marks of the lake.

*Ariel Land Owners, Inc. v. Dring*, 374 Fed.Appx. 346, 350–51 (3d Cir. 2010)

160. The natural elevation of the waters of Lake Ariel and Mud Pond on December 13, 1859 (the date of conveyance of said Ponds to ALO's predecessor in interest) was approximately 1,423.5 feet above sea level.

161. ALO and its predecessors in interest engaged in the construction and maintenance of artificial dams subsequent to December 13, 1859, which dams intermittently raised the elevation of the waters of Lake Ariel and Mud Pond. Each year for a period of months the ALO raises the water from its natural elevation level of 1,423.5 above sea level to an artificially elevated height of 1,425.9 feet above sea level, a difference of 2.4 vertical feet in height.

162. By Order and Judgement entered on January 18, 2008, as amended by Order of August 13, 2008, this Honorable Court held that the Plaintiffs own the West Shore Parcel in fee, and that ALO has the right to annually raise the water level of the lake to a height of 1,425.9 from May 1 to October 31 and must lower the water level of the lake to 1,423.5 from November 1 to April 30 every year.

163. However, ALO and its predecessors in interest have at various times wrongfully held themselves out to be the owners in fee of the West Shore Parcel,

and have, upon information and belief, invalidly granted or attempted to grant certain rights and/or possessory interests in said West Shore Parcel to third parties, including but not limited to Defendants in this litigation.

164. Defendants in this litigation, upon information and belief, have a possessory interest in lots located near but not directly bordering the West Shore Parcel, Lake Ariel and/or the stream connecting Lake Ariel with Mud Pond.

165. Upon information and belief, ALO and its predecessors in interest attempted to effectuate these invalid and unauthorized transfers of certain rights in the West Shore Parcel by virtue of certain invalid, so-called leases, assignments or agreements whereby ALO or its predecessors in interest invalidly attempted to grant specific rights to the Defendants in this action and/or their predecessors-in-interest or predecessors-in-title, that included but are not limited to the right or privilege to access, ingress, egress, possess, traverse and/or construct structures upon the West Shore Parcel, which is a parcel of land owned in fee by Plaintiffs. ALO and its predecessors had no right to do so, and the privileges or rights that these so-called leases or agreements (or documents by any other name) purport to create are invalid and violative of Plaintiffs' property rights vis-à-vis the West Shore Parcel.

166. Defendants hold leases, agreements, and/or "deeds" for lots of land that are separated from Lake Ariel first by land owned by ALO, including the road known as West Shore Drive, and then by the West Shore Parcel.

167. The dispute here is not over whether Defendants have a possessory interest in the lots on which their dwellings are located. Those lots are located on the other side of West Shore Drive from Plaintiffs' property. Rather, the portions of the leases/agreements and/or deeds that are in dispute concern the rights that said documents purport to grant the Defendants for the use of other property as a secondary or accessory benefit or privilege associated with the lots on which their dwellings are located, and for which the Defendants make annual payments to ALO. The Defendants make annual payments pursuant to decades old "leases" with ALO or its predecessors for ingress and egress, from the margin of their respective lots to access Lake Ariel, and the leases describe the land to be crossed for access which includes the West Shore Parcel. Thus, Defendants are essentially paying ALO to cross over the West Shore Parcel for the purposes of accessing Lake Ariel, and Defendants are even paying ALO to construct and maintain boathouses and docks on the West Shore Parcel. However, ALO does not own the West Shore Parcel and cannot grant, convey or charge for such rights.

168. The West Shore Parcel does not share a common property boundary with land owned by any of the Defendants. Rather, Defendants' respective lots whether leased or owned by Defendants are separated from the West Shore Parcel by a road and real property on either side of that road that is owned by ALO.

169. The leases purport to, *inter alia*, grant access over land between the lots held by Defendants and upon which they have (or may if they choose) constructed dwellings and the margin of Lake Ariel, and even the right to construct docks and boathouses on land not leased to Defendants.

170. However, Plaintiffs own part of the land over which the leases purport to grant rights of ingress, egress, and on which they purport to grant the right to construct boathouses and docks. The property of the Defendants is separated from the waters of the lake first by the property of ALO, i.e., the road known as West Shore Drive, and then by the West Shore Parcel.

171. The Defendants' leased lots do not even touch the West Shore Parcel at any point. The West Shore Parcel is bounded by ALO property on both sides.

172. The invalid leases for the Defendants are contained in he recorded documents and/or their chains, referenced above in ¶¶ 23-58 of this Plaintiffs' Complaint. The referenced recorded documents are not incorporated by reference as to their meaning, legitimacy or binding nature, but only to show the location of the disputed documents in the public record. These so-called leases, or otherwise recorded documents include, *inter alia*, leases that purport to allow Defendants to cross the West Shore Parcel, to construct improvements on the West Shore Parcel and to use the West Shore Parcel. By way of example, said leases include the

following or some similar variation of the following type of language invalid language that can be found in leases executed by "F.E. Bortree":

> TOGETHER with the right and privilege at any and all times hereafter during the term of this lease, of free access, ingress, and egress from the lands hereby leased to the margin of said Lake Ariel and vice versa, across and upon the strip of land fifty (50) feet in width lying between the lot of land hereby leased and the margin of said Lake.
> It being distinctly understood and agreed by and between the parties hereto that no fence, buildings or other obstructions of any kind shall be erected or placed upon said strip of land lying between the lot hereby leased and the margin of said lake to intercept or impede free passage across the same or any part thereof.
>
> Said parties of the second part shall during the term of this Lease, for the consideration herein named, have the right to fish in the waters of said Lake Ariel, but nothing herein contained shall give the parties of the second part a right to fish out of season or in violation of this fish and game laws of the Commonwealth. And the said parties of the second part are hereby expressly prohibited from catching fish of any kind or description from the waters of said Lake between the first day of November and the first day of June in each and every year.
>
> TOGETHER with the right to erect on the margin of said Lake in front of the premises hereby leased; but so as not to obstruct in any way the full width of the fifty (50) feet passageway or street above mentioned, a boat-house of neat and suitable design to be used only by the parties of the second part for their benefit and the benefit of members of their family and their guests and in no case and at no time for rent or hire.
>
> IN ADDITION to the right of passage to and from the Lake across the land in front of the premises herein described and leased, the parties of the second part shall

have the right to use all roads and streets laid out and opened by the said party of the first part, or its predecessors in title, about said Lake in common with other lot-holders having similar privileges.

IN CONSIDERATION of the rights and privileges above mentioned and granted and of boating and fishing upon said Lake, the parties of the second part in addition to the consideration hereinbefore mentioned, agree to pay to the party of the first part the sum of ten and 00/100 ($10.00) dollars per year, payable on or before the first day of June in each and every year. It is, however, agreed, that any rental that remains due and unpaid shall be recoverable only out of the said real estate and the rights and appurtenances hereby demised.

ANY VIOLATION on the part of the second parties of any of the terms of this agreement or any use or appropriation of the lands hereby demised for the purpose or purposes other than such as are mentioned and agreed upon in said contract, shall work an immediate forfeiture of this Agreement of Lease, and proof or proofs of such violation being fully sustained in an action of ejectment or other appropriate action at law, it will be lawful for the said party of the first part to retake possession of the premises hereby demised, and own, control and use the same in the same manner as if this Agreement of Lease had never been entered into.

ALL and singular the covenants and agreements herein mentioned shall be binding upon and inure to the benefit of the parties hereto and their heirs, administrators and assigns, as fully as if they were in every instance herein named.

IN ADDITION the parties of the second part shall also during the term of this Lease, for the consideration hereinafter named, have the right to own and use upon the waters of said Lake Two row boats, one sailboat and one launch, for their own use and for the use of members of

> their family and guests, but in no case shall the parties of the second part use or permit their boat or boats to be used by any person/or persons except themselves and members of their family and guests, and in the absence of themselves and all the members of their family, no ·person shall have the right to use their boat or boats on the waters of said Lake.

The foregoing invalid language, which purports to identify or convey rights or privileges that do not exist as a matter of law, and which as written infringes on and violates the real property rights of Plaintiffs.

173. By this Honorable Court holding that the Plaintiffs own the West Shore Parcel in fee (a fact which is acknowledged and admitted by ALO and acknowledged and admitted by Gillespie Plaintiffs in the 2019 Agreement, and binding upon their successors-in-interest and successors-in-title), the Court necessarily held by implication that the leases, assignments and/or agreements whereby the ALO and/or its predecessors attempted to transfer, lease, grant, and/or convey, property rights in the West Shore Parcel to the Defendants and/or their predecessors-in-interest or predecessors-in-title were invalid and incapable of effectuating the transfer of any rights in or to the West Shore Parcel whatsoever.

174. Moreover, upon information and belief, Defendants named in this action, as set forth in greater detail herein, both above and below, have and will continue to wrongfully trespass upon the lands owned in fee by Plaintiffs without

any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action constitutes a wrongful trespass upon the property of Plaintiffs.

175. Upon information and belief each and every one of the Defendants crosses or allows others to cross from the margin of their respective lots across West Shore Drive and then across the property of ALO and then on to and across the West Shore Parcel.

176. Attached as Exhibits "C-1" to "C-41" are images generally depicting Defendants' lots and homes located on West Shore Drive. Also shown are West Shore Drive, and Lake Ariel. Each such Exhibit "C-1" to "C-41" is identified as associated with specific defendants at ¶¶ 23-58. It is these locations that Defendants and/or those associated with Defendant cross from the margin of their leased lots over West Shore Drive, and over and across Plaintiffs' West Shore Parcel to access Lake Ariel.

177. Each and every one of the Defendants, upon information and belief, has constructed permanent or temporary structures for use associated with Lake Ariel on Plaintiffs' property, namely the West Shore Parcel.

## COUNT I
## TRESPASS

178. The allegations in paragraphs 1 through 177 of Plaintiffs' Complaint are incorporated by reference and repeated herein as if fully set forth at length.

179. Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

180. In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, improperly, invalidly, and ineffectively, attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

181. Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

182. Upon information and belief ALO, and/or its predecessors in interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

183. Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

184. Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors in title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

185. Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B. Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 141-158 hereof; and

C. Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 141-158 hereof, and

D. Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 141-158 hereof; and

E. Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs' rights and directly traversing Plaintiffs' property; and

F. Award Plaintiffs compensatory and punitive damages; and

G. Order such other relief as may be appropriate, including awarding Plaintiffs' attorneys' fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

## COUNT II
## EJECTMENT

186. The allegations in paragraphs 1 through 185 of Plaintiffs' Complaint are incorporated by reference and repeated herein as if fully set forth at length.

187. Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

188. In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, invalidly, improperly, and ineffectively, attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

189. Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

190. Upon information and belief ALO, and/or its predecessors in interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

191. Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

192. Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors in title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

193. Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B. Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 141-158 hereof; and

C. Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 141-158 hereof, and

D. Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 141-158 hereof; and

E. Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs’ rights and directly traversing Plaintiffs’ property; and

F. Award Plaintiffs compensatory and punitive damages; and

G. Order such other relief as may be appropriate, including awarding Plaintiffs’ attorneys’ fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

## COUNT III
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

194. The allegations in paragraphs 1 through 193 of Plaintiffs’ Complaint are incorporated by reference and repeated herein as if fully set forth at length.

195. Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

196. In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, invalidly, improperly, and ineffectively attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

197. Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

198. Upon information and belief ALO, and/or its predecessors-in-interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

199. Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

200. Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors-in-title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

201. Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B. Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 141-158 hereof; and

C. Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 141-158 hereof, and

D. Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 141-158 hereof; and

E. Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs’ rights and directly traversing Plaintiffs’ property; and

F. Award Plaintiffs compensatory and punitive damages; and

G. Order such other relief as may be appropriate, including awarding Plaintiffs’ attorneys’ fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

Respectfully submitted,

DAVOLOS LAW GROUP

BY: /s/ Philip A. Davolos III

PHILIP A. DAVOLOS, III, ESQ.
PO Box 188
Clarks Summit, PA 18411
Telephone: (570) 362-3492
pdavolos@davoloslaw.com

*Attorneys for Plaintiffs Nancy Asaro and Lori Dring*

-AND-

ROTHENBERG & CAMPBELL
Howard A. Rothenberg (Id.# 38804)
Ryan P. Campbell (Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
f. 570.207.3991
HRLaw01@gmail.com
HRLaw04@gmail.com

*Attorneys for Plaintiffs Nancy Asaro and Lori Dring*